## BRUNNER v. KAEMPFER.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

INJUNCTION—DECREE.

In an action for an accounting of sales of a patented article, and to enjoin the manufacturing or selling of the article in excess of the stock on hand, where the court finds that defendant had fully accounted, and was entitled to manufacture certain elastic on hand, and dispose of the same under the agreement, and there was no evidence that he intended to sell articles not manufactured from elastic purchased in accordance with the agreement, a decree enjoining the defendant from manufacturing from other elastic, and from selling goods manufactured, after two years, where, under the agreement, there was no limit as to the time of such sale, was erroneous.

Appeal from court of common pleas, equity term.

Action by Marie Brunner against Max Kaempfer. Judgment for plaintiff, and defendant appeals. Reversed.

The following is a copy of the contract sued on:

Contract and agreement, made this 2d day of October, 1893, between Marie Brunner, of the city of Brooklyn, party of the first part, and Max Kaempfer, of the city of New York, party of the second part, witnesseth: That, whereas, the party of the first part is the owner of letters patent No. 404,163, relating to the Universal skirt belt, and the parties hereto are desirous of placing the same on the market under conditions of mutual advantage and benefit, it is agreed as follows: First. That the party of the second part will, at his own expense, manufacture and sell, and advertise largely the merits of, said belt, and will promptly fill all orders therefor, keeping accurate books of account, in which all manufacture and sale thereof shall be set down, with the prices realized, for the term of fifteen months from October 1, 1893, unless this agreement shall be canceled or abrogated as hereinafter set forth. Second. That the party of the second part will pay unto the party of the first part the sum of three dollars per gross royalty on each and every gross of such belts sold or disposed of by him, until five hundred gross thereof shall be sold, and the sum of two dollars and fifty cents on each and every gross thereof sold or disposed of by him in excess of five hundred gross, up to the 1st day of January, 1895. Third. That the party of the second part will keep said books of account open for inspection and examination of the party of the first part, or her representative, at any time, for one hour in each month, such hour to be determined by the party of the second part, during business hours, and will render unto her, on the first business day of each month, an accurate account of the number of belts sold, and will on each of said days pay unto her the royalty as agreed herein, on all goods manufactured and sold up to the time of such payments respectively. Fourth. In case the sales shall amount to at least five hundred gross per year for the year ending January 1, 1895, then this agreement shall be renewed for three years from said sale, on the same terms except as to renewal, and the royalty in each and every year during the continuance hereof, to be paid to the party of the first part, shall be three dollars on the first five hundred gross manufactured and sold in such year, and two dollars and fifty cents on each additional gross manufactured and sold in such year. Fifth. And it is agreed, further, that, during the continuance hereof, the party of the first part will grant no rights to parties outside of this contract to manufacture and sell said belt, without the consent of the party of the second part. Sixth. And it is agreed, further, that, in case this agreement be discontinued for any cause, the party of the second part shall pay the said royalty on all stock on hand or in process of manufacture, and shall thereafter be allowed to sell and dispose of all such goods already made up or in process of manufacture, at sums not less than the regular prices thereof, and the party of the first part shall sell no goods at less prices than such market price, until the party of the second part

shall dispose of all such stock. In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

Marie Brunner. [L. S.]

Max Kaempfer. [L. S.]

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Samuel Fleischman, for appellant.

Julius J. Frank, for respondent.

INGRAHAM, J.    This action was brought to obtain an accounting of sales made by the defendant of a certain patented article, the patent of which was owned by the plaintiff, and which had been manufactured by the defendant, under an agreement between himself and the plaintiff, and for an injunction to restrain the defendant from manufacturing or selling the patented article in excess of the stock on hand or in process of manufacture on January 1, 1895.    The complaint alleges, after setting up the contract between the parties, that the defendant has failed and refused to account or make payments under the contract, and continues and threatens to continue the manufacture and sales of the patented articles, in violation of the contract.    On the trial, the principal controversy seems to have been as to whether or not the defendant was entitled to manufacture into certain skirt belts, known as the "Universal Skirt Belt," which was the patented article in question, certain elastic material which had been purchased by the defendant for the purpose of manufacturing the said belt.    The court in its decision states:

"The undisputed evidence shows that the total sales during the 15 months amounted to 187 gross and $11^5/_{12}$ dozen belts. On these the defendant paid the stipulated royalty, and, on the trial of the action, further accounted for his sales to and including the 30th day of April, 1895. On or about said last-mentioned date, the defendant had on hand $472^7/_{12}$ dozen manufactured belts and 6,950 yards of elastic, purchased by him exclusively for the purpose of manufacturing said belt. There were no belts on hand on that date in an incomplete or partial state of manufacture."

The decision then states:

"Plaintiff contends that the defendant should be enjoined from manufacturing into belts any part of the elastic in question, which, she testifies, is equivalent to between 434 and 435 gross of belts. Defendant, on the other hand, testifies that this elastic is within the purview of the terms of the agreement, relating to the sale of stock in process of manufacture, and that, as such, he should be permitted to manufacture the same into belts, and sell the same under said agreement."

The decision then continues:

"I am of the opinion that the contention of the defendant is right, and that he should be permitted to manufacture the elastic into belts, and dispose of the same under the agreement."

It would thus appear that the defendant had accounted for the sales made by him under the agreement, and that the defendant was entitled to continue to manufacture the belts, or the elastic purchased by him into belts, and sell the same under the agreement.    There is no evidence that the defendant intended or threatened to manufacture or sell any other belts, except from the elastic so purchased, and it would seem, from this decision, that no relief should have been grant-

ed to the plaintiff. Thus having decided the case in favor of the defendant, however, the court directs an injunction to be issued as prayed for in the complaint, the defendant, however, to have leave to sell all belts manufactured and on hand on May 1, 1895, and also to manufacture into belts and sell all elastic which he had on hand on said date, on condition of his being permitted to sell and manufacture said belts and elastic, he to pay, in advance of such manufacture and sale, to the plaintiff, a royalty of three dollars per gross. Judgment was thereupon entered, requiring the defendant, within 90 days, to pay to the plaintiff, not only the royalty upon the belts manufactured and not sold, but also the royalty on all stock of manufactured belts, and of all elastic to be used in the manufacture of the said belts. The judgment further provided that, after the payment of the said royalty, and receipt thereof by the plaintiff, the defendant should be at liberty to sell and dispose of the belts in his possession on May 1, 1895, provided, however, said defendant should sell and dispose of all said belts not later than the 1st day of May, 1897, from and after which date the judgment should become absolute and unconditional. And the judgment provided that the defendant, his servants, agents, and employés, and all persons acting in his behalf, be permanently enjoined and restrained from manufacturing and selling, or offering for sale, the belts described in the complaint. And this judgment was without costs.

Thus it would seem that, after deciding all of the contested questions in favor of the defendant, a judgment was granted which enjoined the defendant from doing what he never intended, or threatened, or claimed he had a right to do, and added to the contract an entirely new clause, by which a time limit is added to the contract; and the defendant was enjoined from manufacturing and selling the belts after May 1, 1897, when, under the contract between the parties, there is no such limit. We think this judgment entirely unauthorized, and that, upon the decision of the court, there should have been judgment for the defendant. There is not a particle of evidence to justify any judgment against the defendant, adopting the decision of the controversy as to the right of the defendant to manufacture into belts the elastic purchased by him prior to the making of the agreement sued on. The plaintiff does not appeal from the decision of the question in favor of the defendant.

The judgment entered should therefore be reversed, and judgment directed for the defendant, with costs of the appeal only, in favor of the defendant, and against the respondent. All concur.